MARK W. SHELDON v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

January 31, 1908.

Nos. 15,342—(125).

Action in the district court for Hennepin county to recover $5,260 damages for personal injuries. The case was tried before Brooks, J., and a jury which returned a verdict in favor of plaintiff for $1,476.25. From an order denying its motion for judgment notwithstanding the verdict and granting a new trial unless plaintiff would consent to a reduction of the verdict to $1,060, which he agreed to, defendant appealed. Affirmed.

*Jno. W. Arctander,* for appellant.

*Hall & Kolliner,* for respondent.

PER CURIAM.

One Kissam had a contract for cutting down and removing certain trees standing on the Fourth street side of the lot located at the northeast corner of Fourth Street Southeast, and Eighth avenue, Minneapolis, and respondent was employed to assist in the work. Appellant's street car tracks

[1] Reported in 114 N. W. 1134.

occupied Fourth Street Southeast, running in an easterly and westerly direction. The trees were felled and cut into logs, and then drawn up over skids by means of a chain and team of horses onto a lumber wagon stationed next to the curb. The skids were about ten feet in length, the log was put in place at the bottom of the skids by the men by means of their cant hooks, a chain was then thrown about it, one end of which was fastened to a rope tied to the side of the wagon, and the other end, when everything was ready to haul up the log, hooked to the whiffle-trees attached to a span of horses, and then the horses pulled straight out into the street and the log rolled up onto the wagon. As the log was being pulled up it was respondent's duty to steady and guide its movements with his cant hook. At the time in question, respondent and a fellow employee, McCurdy, were engaged in rolling up a log about nine feet long, and three feet in diameter. Respondent was standing at the center of and behind the log, and McCurdy at the west end of it; each assisting with a cant hook. As the log proceeded up the skids, it struck the corner of the wagon box, owing to a notch in the side of it, and thereby twisted out of position; but the two men straightened the log and told Kissam to drive on. Kissam noticed a car approaching some three or four blocks away, and asked the men if they could hold the log in place that he might swing the team around back to the north and get it out of the way of the track. The horses were then standing with their hind feet between the rails of the west-bound track, and Kissam immediately began to turn the team around, and as he swung the horses to the right the car was within a block of them, and when it was about one hundred fifty feet distant, Kissam signaled to it by waving his arm up and down, and while so signaling turned his head to guide his horses, and when he looked again the car was so close that he had to jump to get out of its way, and it struck the hind feet of the horses and carried them a distance of about forty feet. The chain attached to the log tightened and jerked in the direction the car was going, breaking it, and releasing the log, which rolled upon respondent and caused his injuries.

Appellant was charged with negligence in running the car at an unusual rate of speed, without proper watchfulness by the motorman. Respondent claimed that if the car had been run at the usual or proper speed, and the motorman had kept a proper lookout, he would have discovered the situation in time to have stopped the car and avoided the collision. There was evidence to support this statement.

The accident occurred about six o'clock p. m. October 26, 1906. The evidence is conflicting as to the light at that time; some witnesses testifying that it was sufficiently light to see for at least a block, and others that it was quite dark. There was also conflict in the testimony as to the speed of the car—some evidence indicating that it was going at nearly twenty miles an hour, and other that it was running not to exceed ten miles an hour—and there was some conflict as to whether the rails were made slippery by rain and leaves.

As to appellant's negligence there was sufficient testimony to sustain a find-ing that persons in charge of the car were propelling it at an unusual rate of speed, without keeping a proper lookout, and that, if they had done so, they could have controlled the car and avoided the accident. It does not conclusive-ly appear that respondent was guilty of contributory negligence. He was not necessarily guilty of contributory negligence because he did not drop the log and get out of the way when he saw the car coming. It was for the jury to say whether or not he had reason for believing that the motorman would have his car under control and stop it, or that the horses would get out of the way. It does not conclusively appear from the evidence that Kissam, respondent's employer, was guilty of contributory negligence. The evidence tends to show that he was conducting his work with due regard to the operation of the street cars. The loading of a log did not ordinarily take but a couple of min-utes, and, had this particular log not caught in the manner stated, respondent would have been out of the way, and it was a question of fact whether he ex-ercised ordinary care. Respondent and his employer were not engaged in maintaining a nuisance in the public street by loading logs in the manner stated. They had a right to use the street, if it was more convenient to load the logs there; but in so doing they were required to conduct such operations with due regard to the use of the street by other persons, including appellant. The trial court did not abuse its discretion in refusing a new trial for newly discovered evidence. The verdict was not excessive.

All of the principles of law applicable to this case are elementary. The questions of fact involved were submitted to the jury under proper instruc-tions, and we discover no errors on the part of the court in instructing or in ruling upon the admission of evidence. Affirmed.